UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 21-CR-40001 |
| | ) | |
| OLIVER SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S OBJECTIONS TO PRESENTENCE INVESTIGATION REPORT AND SENTENCING MEMORANDUM**

The United States respectfully submits this memorandum in connection with the sentencing of the defendant, Oliver SMITH.

On November 23, 2020, SMITH was arrested and charged by complaint with possession of child pornography.  He was subsequently indicted on the same charge and, on March 1, 20223, SMITH pleaded guilty to the one count indictment.  There is no plea agreement. The United States Probation Department determined that SMITH's offense level is 29 (See PSR ¶¶27-40), a guideline range of 87-108 months[1]. A sentence within that range would be "sufficient but not greater than necessary" to reflect the seriousness of SMITH's crime, would provide just punishment and, most importantly, would best protect the public from SMITH's criminal conduct.

RELEVANT BACKGROUND

OLIVER SMITH was indicted after a multi-national investigation that started after Yahoo Inc! submitted a Cyber Tip to the National Center for Missing and Exploited Children,

---

[1] Should the Court calculate the guidelines lower, the government reserves the right to recommend an above guidelines sentence.

NCMEC, regarding an email account used by SMITH. Yahoo reported that the account was used on multiple dates—including July 6, 2019, July 11, 2019, June 23, 2020, and July 10, 2020—to transmit a total of 70 images of nude orpartially clothed children. Homeland Security Investigations reviewed those images and determined that they depict nude and partially clothed children, ranging in age from approximately one year old to twelve years old, some of which focus on the children's genitalia. At the time, SMITH resided in Sweden, and the tip was forwarded to the Swedish National Police. On August 11, 2020, the Swedish National Police executed a search warrant at SMITH's residence in Stockholm.

According to the Swedish National Police, the interrogation began outside SMITH's home on Rindogatan at 07:15 a.m. where SMITH was notified of suspicion of a crime as well as the right to a defender and the right to remain silent. SMITH requested a lawyer and therefore the interrogation was discontinued to be continued once a lawyer had been appointed. The interrogation resume at 09:40 a.m. The suspicion of a crime was once again read out loud to SMITH and he stated that he was "shocked to hear about the suspicion." SMITH stated that he has watched various files for "study purposes, to learn what child pornography is and how it affects children." SMITH stated that he, in his work with children, holds the utmost respect for the children and that the children should live in a safe environment. When asked, SMITH stated that he has never shared any material with any other person. SMITH stated that he has downloaded material that can be sensitive. SMITH has downloaded material from the internet in order to see where the boundary between child pornography and nude images is. Certain videos SMITH has seen are according to SMITH terrible. The videos depict abuse of children, both oral sex and penetrations. SMITH stated that he doesn't want to keep the videos but that he hasn't had the time to remove the material. When asked, SMITH stated that he has around one hundred

files on his hard drive that he hasn't had time to delete yet. SMITH has downloaded these in the last few weeks. SMITH watched child pornography material for the first time in July this year. SMITH stated that he explores children's' sexuality. SMITH has done this as long as he has worked with children. SMITH stated that he also explores and develops other areas such as pedagogy etc. SMITH stated that videos where children show that they do not want to participate or that they aren't having fun, are not okay. SMITH stated that there is a boundary with children's sexuality, and it is that adults should not be active in the children's sexuality. Children who perform sexual acts on other children are more okay except that there may be an adult behind the camera, which is not okay. SMITH does not think that children who have sexual activity with another child is child pornography. SMITH further stated that when children in innocent moments play sexual games on their own initiative without any adult initiative, it is okay. SMITH stated that children can have sexual experiences themselves but not with adults. SMITH further stated that nudist movies with naked families are something nice and beautiful. When asked, SMITH stated that he himself is not a nudist but that he is interested but has not dared to pursue it. SMITH was asked if he has photographed children at preschools he worked at. SMITH stated he has photographed children in their daily activities. SMITH stated that he still has pictures from preschools left on his hard drive. The reason for this is that it is "fun to have memories of the children." When asked, SMITH stated that he has not photographed any naked or half-naked children but only in connection with educational activities and when something special happens, so-called "highlights." SMITH stated he has not photographed any children in connection with toilet visits or when changing in changing rooms. SMITH stated that he has pictures of children where you see bare genitals, but he has downloaded these pictures online. SMITH stated that he has "explored" children's sexuality by looking at both girls and boys, but

mostly girls. SMITH stated that he has also explored his own sexuality, this by watching adult porn with a focus on "urine interest." SMITH stated that he has such great love for children that he would never want to see them abused. SMITH was asked if he has shared any illegal files on Yahoo and if his Yahoo account has been shut down. SMITH stated that the account is closed and that this happened in connection with him sending 3 photos from his Yahoo account to himself with the same account. One of the pictures showed a girl who looked to be suffering when an adult penetrated her. SMITH doesn't remember what the other two pictures showed. This was the first and only time that SMITH has sent anything illegal and then it was to himself. SMITH stated that he has intended to delete these images but has not yet had time.

During execution of the search warrant, the Swedish police seized several digital storage devices, including three mobile phones, one tablet, two hard drives, and two computers. Investigators subsequently searched the devices and located numerous files depicting child pornography, including video files depicting preschool-age children urinating.  Further investigation revealed that SMITH had, over a period of time,  created a number of those videos by recording children who attended the preschool where he worked, including the children's genitalia as they urinated. SMITH later provided the names of the children to the Swedish police. In addition to the videos SMITH produced, he possessed over 500 videos of child sexual abuse material, including images of children under 10 being raped by adult men.

At the conclusion of the interview, the Swedish National Police released SMITH.  On August 27, 2020, SMITH – a citizen of both the US and Sweden – departed Europe and flew from Amsterdam to Boston.

On or about October 13, 2020, HSI-Frankfurt notified HSI-Boston of the Swedish investigation and HSI-Boston commenced its own investigation.  In October, 2020, Oath

Holdings Inc. (formerly Yahoo) provided records in response to a search warrant for SMITH's account.  It included an email sent on July 6, 2019, from a Gmail Account controlled by SMITH to the Yahoo Email Account titled "Fun pictures;" this email contained multiple images, one of which depicts two prepubescent boys, approximately four years old, and includes the lascivious display of both of their genitals. According to records from Google, the "Fun Pictures" image was still accessible in his account as of November 2020.  The Google records also revealed that SMITH had obtained employment with a daycare in Vermont.

On November 15, 2020, HSI executed a search warrant at the home of SMITH's father in Sutton, MA.  SMITH was present in the residence and agreed to speak with agents after agents advised him of his *Miranda* rights. During that recorded interview, SMITH confirmed that he was the user of the Yahoo and Gmail accounts and that he had emailed himself images that constitute child pornography. He also said that the Yahoo account had been closed (he believed by the police)[2].  SMITH said that he had images and videos of children on a toilet on a memory card at the Sutton Residence. He described them as "cute" and opined, "since it's not hurting them, I have them for the beauty of it." SMITH further explained that he got these images and videos off the web using his laptop and saved them to the memory card. He stated that he used a virtual private network (VPN).

SMITH told agents where to find the memory card in his backpack.  It was manufactured by Sony. Markings on the memory card indicate that it was made in Taiwan.  SMITH explained that he originally obtained the memory stick while living abroad but had downloaded the images while in Massachusetts.

---

[2] The account was closed by Yahoo when the CyberTip was made.

A digital forensic examination of the memory card was conducted by agents at HSI. The memory card contained a folder labeled "Cute children."  This folder contained approximately 30 images and 11 videos, mostly of prepubescent children (approx. age 6-12) and appear to be have been produced using hidden cameras in bathrooms.  One video,  is approximately 7 minutes and 50 seconds in length and is a surreptitious recording of a squat toilet. It is edited to show approximately 12 prepubescent children using the toilet, focused on their genitals and is set to music. Another video found on the drive is part of a series of "known" CSAM images and is a surreptitiously recorded video that depicts a nude prepubescent female child, approximately 6 to 8 years old, in what appears to be a public bathroom or locker room.  The camera is positioned at waist height. Metadata associated with the file shows that it was "last accessed" on September 8, 2020.

On November 24, 2020 SMITH was arrested at his father's home in Sutton and he was interviewed a second time.  At that time, SMITH confirmed that he downloaded the videos saved in the "cute children" folder to his memory stick while at his father's house in Massachusetts and reiterated that he believed the downloading was in September.   He stated that he had masturbated to videos of the children.

APPLICATION OF THE GUIDELINES

The PSR properly applies the five-level enhancement under 18 U.S.S.G. § 2G2.2(b)(5).  This enhancement applies where, as here, a defendant is convicted under 18 U.S.C. § 2252A and has engaged in "two or more separate instances of sexual abuse or sexual exploitation of a minor," regardless of whether that abuse "occurred during the course of the offense," "involved the same minor," or "resulted in a conviction for such conduct."  U.S.S.G. § 2G2.2(b)(5),

cmt. n.1.  The Guidelines further explain that the "sexual abuse or exploitation of a minor" includes any of the following:

> (A) conduct described in 18 U.S.C. § 2241, § 2242, § 2243, § 2251(a)-(c), § 2251(d)(1)(B), § 2251A, § 2260(b), § 2421, § 2422, or § 2423;
> (B) an offense under state law, that would have been an offense under any such section if the offense had occurred within the special maritime or territorial jurisdiction of the United States; or
> (C) an attempt or conspiracy to commit any of the offenses under (A) or (B).
> *Id.*

Here, the defendant's conduct in Sweden is sufficient to trigger the application of this enhancement.  As noted in the PSR, prior to residing in Massachusetts, the defendant worked at a preschool in Sweden and created multiple videos of minors urinating and/or defecating in a manner that focused on the minors' genitals.  *See* PSR at ¶ 12.  These videos were discovered on the defendant's devices by Swedish law enforcement, and the defendant told Swedish police the names of the children depicted in his videos.  *Id.*  These devices were lawfully obtained by HSI in Massachusetts, and a forensic examiner discovered multiple videos that appear to have been surreptitiously recorded by the defendant in Sweden using his cell phone and that depict the defendant assisting preschool-aged children undress and urinate or defecate outside.  For example, in one video, the defendant can be seen removing a small girl's underwear, spreading her legs apart, positioning the camera to focus on her exposed vagina, and then wiping the child's genitals. In another video, the defendant can be seen placing the camera on the ground, lowering the pants and underwear of a child, and then picking the child up and positioning her legs in the air so that her genitals are directly exposed in the center of the frame.

The defendant's creation of these videos represents multiple distinct instances in which he attempted to and did in fact engage in conduct described in § 2G2.2(b)(5)'s enumerated statutes—that is, 18 U.S.C. § 2423(c) and (f)(3), which prohibits a U.S. citizen from residing in a

foreign country and producing child pornography, and 18 U.S.C. § 2251(a), which criminalizes the production of child pornography. It does not matter under the Guidelines that this conduct did not form the basis of his guilty plea here, nor is it relevant that the conduct occurred in Sweden. *See United State v. Richards*, 790 F. App'x 788, 788-89 (6th Cir. 2020) (applying enhancement in receipt-of-child-pornography case based on defendant's unrelated admission that he twice paid minors for sex while in the Philippines). The defendant's reliance on *U.S. v. Martinelli* is misplaced. The *Martinelli* court was not considering the application of extraterritorial conduct on the guidelines, but whether the Child Pornography Prevention Act (CPPA) has extraterritorial application under clause 3 of Article 134 of the Uniform Code of Military Justice. *United States v. Martinelli*, 62 M.J. 52, 56 (C.A.A.F. 2005). That opinion offers no assistance to this Court in determining the proper application of the sentencing guidelines. As an initial matter, 18 U.S.C. § 2423(c) explicitly criminalizes the production of child pornography that occurs abroad.

Still, here the question is not whether was properly convicted of producing child pornography that occurred abroad, but whether his prior production of child pornography is relevant conduct for the calculation of his guidelines for the offense that did occur in Massachusetts. The Government (and apparently the defendant) can find no examples of circuits that have answered in the negative; instead, numerous appellate decisions spanning the last few decades that have held that guideline enhancements based upon foreign conduct are properly applied. *See United States v. Wilkinson*, 169 F.3d 1236, 1238–39 (10th Cir. 1999) ("It would be absurd to suggest that there is a long-standing principle that judges cannot consider in calculating a sentence relevant conduct committed outside of the United States. In fact, 18 U.S.C. § 3661 clearly states otherwise, requiring that, "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a

court of the United States may receive and consider for the purpose of imposing an appropriate sentence."); *United States v. Zayas*, 758 F. 3d 986 (Eighth Cir. 2014)( In defendant's sentencing for receipt of child pornography, appropriate to apply sentencing guidelines cross reference for an offense that involved causing or permitting a minor to engage in sexually explicit conduct for the purpose of producing a visual depiction of such conduct based upon conduct occurring in Mexico); *United States v. Spence*, 923 F.3d 929, 931-33 (11th Cir. 2019) (considering defendant's distribution of child pornography in Jamaica as basis to apply distribution enhancement under U.S.S.G. § 2G2.2(b)(3)(F));  *United States v. Harvey,* 2 F.3d 1318, 1326–30 (3d Cir.1993)(guideline enhancement based upon defendant's production of child pornography in Philippines appropriately applied.)

Nothing in § 2G2.2(b)(5) carves out an exception that precludes consideration of the defendant's Swedish conduct.  In fact, sentencing courts are specifically instructed to consider without limitation "information concerning the background, character, and conduct" of a defendant when determining an appropriate sentence.  *See* 18 U.S.C. § 3661.  And here, the circumstances surrounding the defendant's production of child pornography depicting preschool-aged children in his care plainly weighs on his culpability in possessing similar child pornography in Massachusetts.  *See, e.g.*, *Spence*, 923 F.3d at 934 ("We need not examine any foreign law to know that it is appropriate to consider [defendant's distribution of child pornography in Jamaica] as indicating that Spence's crime of possessing the videos in the United States is more culpable than mere possession alone would have been."). Accordingly, the defendant's objection must be overruled.

ARGUMENT

The Court must impose a sentence that is "sufficient, but not greater than necessary" to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2), namely to: (A) reflect the seriousness of the offense, promote respect for the law, and provide just punishment; (B) adequately deter criminal conduct; (C) protect the public from further crimes of the defendant; and (D) provide the defendant with the most effective training, medical care, or other treatment. In doing so, the Court must consider the history and characteristics of the defendant, the nature and circumstances of the offense, and whether a punishment can provide adequate deterrence to future criminal conduct and offer protection of the public.

At the time of his offense and arrest, the defendant was 45 years old, educated, a world traveler He earned a Bachelors of Science degree in nursing and was a registered nurse in the states of California, Vermont and New Hampshire. In addition to working as a nurse, he spent years working as a preschool teacher abroad and in the United States. He is an educated man who intentionally surrounded himself by some of the most vulnerable members of the community, in a position of authority. Not only did he surround himself by these children, he used them to create child pornography.

The seriousness of this offense cannot be overstated. The defendant, shortly after his home was searched by the Swedish Police, flew to the United States and downloaded more images and videos of child pornography. In *New York v. Ferber*, the Supreme Court recognized:

> [P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A

child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography.

458 U.S. 747, 759 n.10 (1982).

It is obvious from the defendant's behavior that he understood that the possession (and creation) of child pornography to be forbidden.  While in Sweden, he made surreptitious recordings of the children he was entrusted to care for, not sharing the videos he made of them with either his boss or the children's parents. When confronted by the Swedish Police, he lied about having photographed the children in connection with their toileting.  He told the Swedish police that, in his view, the "boundary with children's sexuality is that adults should not be active in the children's sexuality," yet he possessed images of pre-adolescent children being penetrated by adult men. He further claimed that he had emailed child pornography from one account to another in anticipation of reporting it [to law enforcement].

If there had been any doubt, SMITH was reminded of the prohibition of possessing and transporting child pornography when his Yahoo account was closed after he shared the "fun pics" video.  SMITH told the Swedish National Police that he believed the police had closed his account.  This belief, however, did nothing to dissuade him from keeping his collection in Sweden.  When his collection was seized from him, he flew to the United States and accumulated a new collection. Not only did he download the images, he used a Virtual Private Network in an attempt to hide his internet traffic.  He saved the images to a miniscule memory card, separate from his devices.   This pattern of behavior is indicative of an individual who will engage in this criminal behavior repeatedly, without dissuasion, regardless of the efforts of law enforcement or others to stop him.

## CONCLUSION

For the foregoing reasons, the Court should adopt the Guideline calculations as calculated by the PSR and imposes a guideline sentence on the defendant.

Respectfully submitted,
JOSHUA S. LEVY
Acting United States Attorney

By:   /s/ *Kristen M. Noto*
Kristen M. Noto
Assistant U.S. Attorney
United States Attorney's Office
595 Main Street
Worcester, Massachusetts 01608

William G. Clayman
Trial Attorney
Child Exploitation and Obscenity Section
U.S. Department of Justice
1301 New York Avenue NW, 11th Floor
Washington, D.C. 20005

Certificate of Service

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Kristen M. Noto*
Kristen M. Noto
Assistant U.S. Attorney

Dated:  August 10, 2023